Good morning, Your Honors. May it please the court, Attorney Richard Reiling on behalf of the appellants in this matter. As set forth in the brief, this case involves the application by the District Court of the New Hampshire Witness Absolute Immunity Rule to an investigator. As the appellants have argued... No, to a witness who investigated prior to provide a basis for his testimony. Are you asking us to slice his activities into two pools, investigative and testimony? Your Honor, in regards to that argument, the District Court, as I think Your Honor is referring to, is relying on the Provincial case. The District Court is not taking into consideration the court's decision in Frost v. Delaney where... In regards to that case, that case involves a bank investigator who is appointed by a New Hampshire administrative body to investigate. And just like in this case, the New Hampshire Appraisal Board appointed an investigator to determine whether there was probable cause to proceed. In the Frost case... Are we supposed to conclude that in some subselential way that Frost qualifies or even overrules the Provincial case? There's simply no discussion of the issue that is front and center in this case. In the Provincial case, I think we perhaps have to start with that. That case does involve appraisers. The appraiser in Provincial was appointed after litigation had commenced as part of a takings action. There were two appraisers on each side in that case, like a typical lawsuit. This did not involve an administrative body appointing an investigator to investigate whether probable cause exists. In this particular case, the fact that the investigator later testified in regards to his investigation does not change the fact that he was originally appointed as an investigator and that the investigation was to determine whether there was probable cause to proceed. If I understand it, you're saying Preventure is a notable extension of the witness absolute immunity, right? And the question is, how far does it need to extend that? If I understood you, you're saying the Frost case suggests we should be wary of concluding that the New Hampshire Supreme Court means to extend Preventure beyond its particular facts, because otherwise what we're effectively saying is any investigator appointed who's going to be testifying before that administrative body has absolute immunity from the get-go. Is that the idea? You already summarized my argument better than I did. That is the argument. And then the issue, which is why I think at the end maybe you say the right thing to do is to certify, because if there's nothing in Frost that tells us Preventure doesn't go farther, because they concluded under official meaning it didn't have to get to absolute immunity. That's correct. But then you just say, but the facts of Preventure don't also tell us that outside of that particular context they also mean to capture a case like Frost. So there's just a lacuna in the case law in New Hampshire, so we should certify the Supreme Court. I think that's the ultimate conclusion. Why is this case so different than Preventure? You say that litigation, I understood you to say that litigation had already begun in Preventure. I thought that was not the case, that if the parties could not agree on the value of the property at issue, that eminent domain proceedings would commence, just as in this case there might be disciplinary proceedings if the report of Mr. Currier suggested some basis for that. In both instances, the formal proceedings had not begun, but everybody understood that they might ensue depending on the nature of the reports that were forthcoming from the investigators in the respective cases. Why isn't this case just like Preventure? Well, Your Honor, in regards to Preventure, the court made a specific finding that at the time of the reports, the parties seriously contemplated litigation as the terms of the agreements and the proceedings. But you say that litigation had already begun. That's not the case. Well, Your Honor, in connection with the eminent domain procedure, it is adversarial from the start, given the fact that both sides hire an appraiser, both sides present those appraisers numbers. There is a form of conciliation where both sides attempt to resolve that. Well, this decision is important because what may represent an extension of the absolute immunity law is implied in the situation where litigation has not yet begun. That seemed to be what Preventure did. That was a significant step. I guess my question is, why again, factually, is the posture of this case any different than that case? Your Honor, like, and I understand the court's understanding of Frost, but like in Frost, at the time that the investigator was appointed in the re-insterna matter, the purpose of the investigation was to determine whether probable cause existed at all to proceed, much in the same manner as the federal case that we cited, the Simpson case. Courier was clearly serving as an investigator at that point. As Patricia Sherman, the head of the board, testified, the purpose of the investigation is to determine whether probable cause exists. The board relied on that determination of probable cause to move forward. In the absence of that report, they would not have moved forward. I mean, that testimony is pretty clearly set forth as one of the reasons that the court considered the testimony on summary judgment as opposed to granting a judgment on the pleadings. So we have an individual who is investigating to determine whether proceedings should go forward. And that is far different than the situation in ProVenture, when each side hires an opposing expert, and the court makes a specific finding that litigation is seriously contemplated. And of course, we would argue in the context of eminent domain, I mean, that's the beginning of the adversarial process when both sides submit an appraiser. When you say, one thing you could be saying, when you use the phrase investigator, in that sense, ProVenture is not really a case with an investigator, because the idea is there's an agreement between the two parties to work out how this deal is going to go down. So all of that's in the shadow of, look, if this breaks down, obviously, we're going to have to have litigation over this. ProVenture, then, wouldn't speak to the kind of case that looks more like the government's going after somebody. And I guess that's the part that's some force to me, because if you just take Buckley, you know, that looks a lot like this type of case. It's not criminal. But, you know, although the prosecutor has to be more hesitant to say in the investigating phase, they also have. And so this looks like that, and Frost looks like that, but ProVenture looks fairly different in that regard. And that's the argument, Your Honor, that we made before the district court, that we took the position from day one that in the event that it was raised as an affirmative defense, that the courier could claim that he was entitled to New Hampshire's form of qualified immunity, which they call official immunity. But he was not entitled during the time of his service as an investigator to absolute witness immunity. Okay, is that why you brought it, you did bring this suit in federal court? Yes, Your Honor. Originally, just... It wasn't removed from state court. It was not, Your Honor, because originally in the case, there were some claims that Mr. Courier not only violated the provisions of New Hampshire's law, but also 93A Massachusetts, as these two gentlemen compete throughout the Northeast. But you knew from the beginning that you were going to try to draw a distinction between qualified immunity and this absolute witness immunity, and that it would involve some construction of the ProVenture case. And yet you choose to bring it in federal court rather than state court. We are under some constraints about how we interpret state law. And we've never asked for certification, have you? No, Your Honor, we did not ask for certification because we did not feel that under existing New Hampshire law that ProVenture applied because it applies to a witness and not an investigator. We took the position throughout that it was improper under New Hampshire law to make that determination, that New Hampshire has a form of immunity in place for investigators called official immunity. So we did not feel that that was necessarily an unsettled area of the law, given the distinction that is made in numerous federal cases as well between an investigator and someone who's hired during the litigation process to serve as a witness. Does ProVenture, I forget, does ProVenture use the word investigator? No. So your basic idea is ProVenture just doesn't speak to the situation of investigators, so why would anyone think that it would apply there? And again, our understanding of ProVenture was as simple as that from the beginning, that it just didn't apply to someone who was specifically appointed as an investigator.  Why do you place so much store in the label witness or investigator? I understand that Mr. Currier was an investigator in the sense that there were allegations of some misconduct in the submission of this appraisal in the absence of a license. But again, everybody understood that the report was a possible prelude to a disciplinary hearing where Mr. Currier would almost surely be a witness. So just calling him an investigator doesn't alter the fact that he is almost surely going to be a witness in the same way that the appraiser was in the ProVenture case. And all those rationales stated in ProVenture, why it's important to provide absolute immunity to somebody who is going to function as a witness, all those rationales would seem to apply equally here. Well, again, the role of an advocate witness and an investigator who is investigating to determine whether probable cause exists to proceed, I mean, there was certainly no guarantee that Currier would ever have served as a witness because as Patricia Sherman, the president of the board, testified, the board relies on that investigator just like the prosecutor relies on the investigation done by its investigator. That's a more impartial function. The whole role of the investigator, as Ms. Sherman testified, is to be without bias, to conduct this review that the board can rely on in an impartial manner to decide whether probable cause exists for the board to take action. That's entirely different than a situation where two competing sides hire experts in a litigation footing when there's a decision to proceed that is reasonably contemplated. And that's the situation in ProVenture as opposed to the situation in France. Am I right in saying you're really trying to make, you've got three categories going. There's expert, I mean, there's investigator versus witness. And at some level that is, I think, confusing things because this investigator is going to be a witness. There's a high likelihood that they would and no more of a likelihood that they would than the appraiser in ProVenture. But you're saying the appraiser in ProVenture is still different than the investigator here because of the role we expect of an investigator. And so when we think about how to apply it, maybe we should be wary of saying that a government official who's supposed to be mutually trying to determine whether somebody's violating the law gets absolutely, because that's an awfully big thing to give a government official. That's exactly right. Thank you, Your Honors. I'm sorry, Your Honors, unless there's any further questions. We'll recall you if we have further questions. Thank you, Your Honor. May it please the Court, my name is Russ Hilliard. I'm with the Upton Firm in New Hampshire and I represent Mr. Currier. The problem here is that the plaintiffs have been trying to impress 42 U.S.C. 1983 law on a lawsuit they brought under the common law of New Hampshire and two state statutes, but not a federal case. And that's why the Frost case and the Stinson case from the Federal Appellate Court simply have nothing to do with this case. There's been no allegation here that Mr. Currier was a state actor. As a matter of fact, the complaint alleges very clearly that he was in business, doing business, and was an appraiser.  And therefore, that's why the Frost case, decided by New Hampshire Supreme Court, would have never made reference to the Prevention case and seek to overrule it, sub silentio, or limit it in some way. There's simply unrelated concepts here. I don't think I follow that. The government hires somebody to do its investigation of whether somebody's committed wrongdoing? And we're supposed to treat that person just like an appraiser that's been hired in a private contract, in a contract dispute? That's what this complaint is about. If the plaintiffs wished to make a claim of deprivation of civil rights because of some government action, they might have asserted a 1983 claim, as the plaintiff in Frost did in state court, but it was a 1983 claim. But I don't think... You're talking about a common law claims of defamation and interference with contractual relations, not deprivation of civil rights. And therefore, this case is just... My point is the fact that they're suing the... If I sue a government official and a government investigator for defamation, that doesn't change the official's capacity as being a government official, just as the nature of the claim that I'm bringing against them. Well, the Frost court explicitly said the doctrine of qualified immunity is a federal creature. It simply has no role to play in... You're saying that New Hampshire's law is that when it goes out and hires investigators to figure out whether citizens of New Hampshire have violated its law, those investigators have absolute immunity in conducting the investigation of what they say. Why would we think that's what New Hampshire Supreme Court wants the law to be, when all you have is prevention? Because this is on all fours with prevention, Your Honor. Except for the fact that there was no effort by the government there to retain the person to investigate the wrongdoing of another person. Yeah, but here, what happens, and this is undisputed in the record and it's in the appendix at page 41, the way New Hampshire law works, as required by federal law, once a grievance is filed with the New Hampshire Real Estate Appraisal Board, a grievance... In this case, the grievance only said, he's not licensed. State law requires, as required by federal law, that that appraisal be reviewed in its entirety for compliance with professional appraisal standards. It's simply a requirement. It's set forth in the rules. It's in our brief. Right, but that seems to make it worse, not better, because I can't... I'm a person who's done something. Now all of a sudden the state's coming after me. I can't get out of that. I can't avoid the contract. I'm just stuck. Someone's filed a grievance. Now the state's going to come after me. And the person investigating me, I know, if your rule is right, has absolute immunity in whatever they say in the course of that investigation against me. Why would we think New Hampshire would set it up that way? In what other context does the government get to have an official go after somebody and investigate their wrongdoing with the notion that they have absolute immunity? So why is this any different? Well, because of the words of prevention, as quoted by Judge LaPlain, it reflects a determination that the potential harm to an individual, here LaPlain is, is outweighed by the need to encourage participants in litigation, parties, attorneys, and witnesses to speak freely in the course of due process. But you say that about a police officer investigating somebody for a crime. I understand the same logic could be used. And the analysis under 1983 claim of deprivation of civil rights would be entirely different. This is a common law tort case. And therefore, the common law defenses apply. Counsel, the allegations here that are relevant, if absolute immunity applies, are frankly troubling. I mean, Mr. Kruger signed a statement indicating that he could be completely fair and impartial and had no interest in the investigation when the allegations are that, in fact, the parties in this case were the chief competitors for the kind of business, the business of providing appraisals of gas stations and cumberland farms. And then the appraisal, the initial charge was submitting an appraisal without being licensed, and yet the report that is done raises all these questions about the quality of the appraisal that was done. I mean, that seems to have nothing to do with the licensing issue. And then there is a lot of publicity that attends this process. It has an adverse effect on the appellate's business. So that is a troubling scenario, understanding we're just looking at the allegations, and yet none of that becomes relevant under absolute immunity. That's true, Your Honor. But doesn't that suggest a basis for Judge Barron's concerns about the implications of applying absolute immunity in a situation like this? And the reason for the absolute immunity is what I just read. But in cases where immunity is raised as a defense, there's always going to be a claim that the testimony was false, that the witness had an improper motive, that for some reason the testimony was suspect. And that's why you would have to prove under official immunity that it was intentional or reckless in a really high state of mind, because if the government was hiring investigators who were intentionally going after citizens by making up stuff against them, I would have thought New Hampshire would have an interest in making that person liable. But if you can't meet that high standard, then there's no problem. That's what we do with respect to police officers. What's our reason for thinking it's different? The common law you're talking about is a witness immunity. I understand the New Hampshire Supreme Court extended it in the facts of prevention. But to extend it as broadly as you're suggesting seems... I don't know what in prevention tells us that we have to conclude the New Hampshire Supreme Court wants to do that. Are there cases from other states that apply absolute immunity in a context like this? Because I didn't see any citations to other states that do that under this common law immunity. We didn't have to go there, Rana, because prevention analytically is the same. Prevention didn't rely on the restatement section. I can't quote the section by memory. But that had the same principle, and Judge LaPlante adopted it. If I may, the basic claim is there was a conflict of interest from the very beginning. Doesn't New Hampshire law itself require that if you're going to appoint an investigator, it not be someone who has a conflict of interest? I don't know about New Hampshire law, Your Honor, but as Judge LaPlante noted in his opinion, the allegation that these two gentlemen were direct competitors was a gross overstatement of fact based on the evidence summary judgment record. So he rejects this notion as on summary judgment having taken evidence on it, which would distinguish this case from a real conflict of interest situation. As a matter of fact, Your Honor, the record does not demonstrate a conflict of interest. As a matter of law, the immunity is there. So the witness who participates in a proceeding does not then have to be subjected to a lawsuit such as this. Even if they had a conflict of interest? There's no prohibition. I'm not sure I know what law you're referring to, Your Honor. I don't know prohibition. He signed a certification. He explained his signature, and that's in the record. Well, if there is no law, then the prospect of absolute immunity seems to be more worrisome, not less, because under your theory of the case, an administrative board in New Hampshire can hire an investigator it knows has a conflict of interest with the person they're investigating, then say lots of untrue things about that person intentionally and have no prospect of liability for having done so. And that all follows from prevention on your view. Prevention gives absolute witness immunity, and that is the law of New Hampshire, and that is the law of Judge LaPlante in this circumstance. Because of the factual finding by Judge LaPlante, the question of whether there might be an exception to prevention for situations of conflict of interest is not really before us. That's correct. Thank you, Your Honor. Any further questions?  Thank you. Thank you, Your Honor.